# 𝔅𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## FRENCH, BY, &C., v. WATERMAN.

### December 4, 1884.

1. MARRIED WOMAN—*Separate Estate—General Engagements.*—The note, or other general engagement of a married woman, owning separate estate, creates no specific lien on such estate. To satisfy the same, the personal property and the rents and profits of the real property of such estate, may be sold by decree of court when the wife's interest is absolute, and there is no restraint upon its alienation. But, in no case, should the real estate be decreed to be sold to satisfy such engagement.

2. IDEM—*Idem—Practice in Chancery.*—A bill to subject *feme coverte's* separate estate to payment of her note, or other general engagement, filed after her alienation of such estate *bona fide* for valuable consideration, presents no case meet for the consideration of a court of equity, and will be dismissed on demurrer.

3. IDEM—*Idem—Creditors by Note, &c.*—Where land is settled on wife for life to use for support of self and children, remainder to her children surviving her, but to her husband, should he survive both her and them, with power to her to sell trust *corpus*, and reinvest proceeds subject to same trust and limitations, creditors, by her general engagements, are entitled only to her ratable portion of the remnant of those rents and profits after deducting the support of herself and children.

4. IDEM—*Idem—Specific Lienors.*—Where in suit by such creditors it is not alleged nor apparent that such remnant exists, the bill will be dismissed, but without prejudice *quoad* such creditors as appear to hold specific liens on the trust property, yet who have not set them up in the suit, although reported, without sufficient proof, by the commissioner.

Appeal from decrees of circuit court of Culpeper county, entered 6th June, 1878, 7th November, 1879, and 8th June, 1881, respectively, in the chancery cause wherein Simon Water-

man was complainant, and Laura J. French and James S. French, her husband, and their children, James S. French, Jr., and five others, and M. D. Corse and W. D. Corse, partners in name of W. D. Corse & Co., Joel Garnett, George Clark, Edward S. Dangerfield, trustee, Robert E. Garnett, H. O. Claughton, trustee, Sally Carter, and Robert S. French, trustee, were defendants.

The sole object of the bills, original and amended, was to charge upon a tract of land in the county of Culpeper, containing 427 acres, which had been conveyed on 6th November, 1871, by Robert E. Garnett to the separate use of said Laura J. French, the payment of a note made by her said husband and herself to said Waterman on 18th December, 1874, for $333.31, payable two months after date. The decree of 7th November, 1879, directed the sale of the land; but the decree of 8th June, 1881, set aside the decree for sale, and directed the land to be rented out to pay her debts. From these decrees Mrs. French appealed to this court. Opinion states the case.

*Wm. J. Robertson,* for the appellant.

*J. G. Field* and *G. D. Gray,* for the appellee.

LACY, J., delivered the opinion of the court:

The case is as follows: In March, 1876, the appellee, Simon Waterman, brought this suit to subject the lands in the bill mentioned to the payment of a note executed by the appellant, Laura J. French and her husband, James S. French, for the payment of the sum of $333.31 to said Waterman on the 18th of December, 1874. It appeared from the original and amended bills of the plaintiff, and the exhibits filed therewith, that on the same day the land in question was conveyed to the appellant, Laura J. French, she and her husband united in a deed conveying the same, in trust, to a trustee, to secure, first, the

payment of certain debts therein specified as due from her said husband to Mrs. Sallie Carter and W. D. Corse & Co., respectively, and then to indemnify one R. E. Garnett against any claims or charges against a tract of land in the county of Tazewell, which had been conveyed to him by the appellant, Laura J. French, and her husband, by deed of even date therewith. It further appeared that the said appellant and her husband, for the purpose of securing the payment of debts due from him, had united in three several deeds of trust upon said land, one of them having been executed on the 2d of October, 1872, one on the 5th day of February, 1874, and the other on the 20th day of April, 1874. It further appeared by an exhibit filed with the said original and amended bills, that one James McCulloch, by deed dated 11th of March, 1859, had conveyed certain real estate, situated in the city of Alexandria, to Robert S. French, upon trust, that the said Robert S. French should permit the appellant, Laura J. French, to occupy, possess and enjoy the same, and to take the rents, issues, and profits thereof, for and during her life, for her support, and for the sustenance of her children by her said husband, James S. French, born and to be born, free and clear of, and from all manner of charge and encumbrance of her said husband, or any husband she might thereafter have; and upon the further trust, that should she die before her husband, James S. French, the said property should pass to her children to the exclusion of him; and in the event of the death of any of her children before arriving at age or being married, and before the death of the said Laura J. French, the proportion to which he or she would be entitled, should pass to the said Laura J. French and her children remaining, to the exclusion of her husband, the said James S. French ; but should he survive both his wife and his children by her, the property was to pass and belong to him; power being given in the deed to the said Laura J. French to sell the said real estate and invest the proceeds of such sale in other property, to be held upon the same trusts and limitations.

It further appeared, by an exhibit filed with the said bills, that under the power thus given her, the said appellant, Laura J. French, and her trustee, Robert S. French, in April, 1875, sold said real estate in the city of Alexandria for the sum of five thousand dollars and invested said amount in the purchase of the said tract of land in the county of Culpeper above mentioned, which had been conveyed to her separate use by Robert E. Garnett, as mentioned above as having been encumbered by the several named trust deeds, a large portion of said amount being applied to the payment of the encumbrances stated above.

Accordingly, on the 28th day of April, 1875, the said Laura J. French and her husband, and the trustees and creditors in the trust deeds of 5th of February, 1874, and 20th of April, 1874, in consideration of said sum of $5,000, paid and applied as aforesaid, united in conveying said tract of land to the said Robert S. French as trustee for the said Laura J. French and her children, upon the same trusts and with the same limitations declared and set forth in said trust deed of March 11th, 1859, executed by James McCulloch.

The appellee, Waterman, having set forth all these facts, made the appellant, Laura J. French, and her children, and husband, and the trustees and beneficiaries in each of the said deeds of trust, defendants; called upon the parties secured by said deeds to answer and say how much, if anything, was due them respectively, and asked for all necessary accounts to be taken, and asked for a decree to subject the land in question to the payment of his claim, claiming that inasmuch as the note for the same was executed before the conveyance of April the 28th, 1875, said land was chargeable therewith.

On the 6th of June, 1878, the cause came on to be heard upon the answer of the infant defendants by guardian *ad litem* appointed by the court, a general demurrer filed by Laura J. French and her husband to the original and amended bill, and upon said bills taken for confessed as to all of the other defendants. Whereupon the court, by decree entered in the cause,

overruled the demurrer and referred the cause to one of its commissioners to take:

First. An account of the separate estate of Laura J. French in the tract of land conveyed to her by deed of R. E. Garnett and wife, of November 6th, 1871; of the fee simple and annual value of the same; and also of the balance of her separate estate, if any, liable for the plaintiff's debt under the deed of April 28th, 1875, filed as an exhibit with the amended bill; and to report whether the separate estate which the said Laura J. French had under the deed from R. E. Garnett is liable for the plaintiff's debt.

Secondly. To take an account of the plaintiff's debt, and of all other debts constituting liens upon said separate estate, with their priorities, if any.

On the 12th day of October, 1878, the commissioner filed his report under said decree, by which it was made to appear that there was due to Robert E. Garnett, on account of amounts paid by him on the Tazewell lands, $650 with interest and $536.38 with interest, which constituted the first lien, and the plaintiff's debt of $333.31, which constituted the second lien, and that all the other liens thereon had been paid; that the land was worth $4,277.50, and its annual value $150.

This report was recommitted, and again reported without change.

In June, 1879, James S. French answered. And on the 7th of November exceptions were filed by Laura J. French and her children to both reports of the commissioner:

1st. Because R. E. Garnett was allowed two debts stated above without proof that any debt was due him at all.

2d. Because the plaintiff, Waterman, was allowed a debt of $407.36 as a charge on the separate estate of Laura J. French, when it appeared by the record that the separate estate she had when she executed the negotiable note filed with the bill, was subsequently sold for a valuable consideration; sold and con-

veyed by deed of record before the institution of this suit; and the separate estate acquired since is not liable for said debt.

On the same day these exceptions were filed, a decree was entered overruling them, confirming the commissioner's report, and appointing commissioners to sell so much of the land as was necessary to pay the debts appearing to be due by the said commissioner's report. No action was taken under this decree, and on the 8th of June, 1881, a decree was entered in the cause setting aside and annulling the decree of November 7th, 1879, as having been improvidently entered, and appointing the sheriff of the county receiver in the cause to rent out the property until the further order of the court, either for a part of the crop or for a monied rent, and either by private contract or at public auction. The appellants then applied to this court for an appeal, which was allowed on the 18th of April, 1882, by one of the judges.

The first error assigned here is, that it was erroneous not to sustain the demurrer of the said Laura J. French and her husband to the amended bills, and to dismiss the same, as showing upon their face that the plaintiff had no right to subject either the land itself or its rents and profits to the payment of the debts due him. That conceding the debt to have been *chargeable* upon the rents and profits of the land, so long as it was held by Laura J. French under the deed from R. E. Garnett, conveying the same to her separate use, it was not a *lien* upon them so as to affect the title of a *bona fide* purchaser of the land.

And this is the first question to be passed upon in this court: Can the debt of the appellee, Waterman, be held to have constituted a specific lien on the land in question, by the execution of the note to Waterman, so as to bind the land held by Laura J. French as her separate property in the hands of Robert S. French, her trustee, holding it upon the trust and limitations cited above? This question must be considered with reference to the claim of Waterman alone, he being at that time the only

plaintiff setting up any claim in this suit; nor has any other creditor up to this time set up any claim against the trust estate by answer or by petition in the cause.

The obligation in question given to Waterman is merely a contract to pay, not saying out of what it is to be paid, or by what means it is to be paid.

In the case of *Owens* v. *Dickenson*, 1 Craig and Phillips, 52, Lord Cottenham, speaking of an engagement in writing of a married woman, observed : " Now that document alone, within the authority of cases which have been decided, would have been operative upon her separate estate, but not by way of an execution of a power.   *   *   *   It cannot be an execution of a power, because it neither refers to the power nor to the subject-matter of the power.   *   *   *   Besides, as was argued in the case of *Murray* v. *Barlee*, 3 M. & K. 209, if a married woman enters into several agreements of this sort, and all the parties come to have satisfaction out of her separate estate, they are paid *pari passu*, whereas, if the instruments took effect as appointments under a power, they would rank according to the priorities of their dates.   It is quite clear, therefore, that there is nothing in such a transaction which has any resemblance to the execution of a power."

The established doctrine of the English chancery is, that the general engagement of the wife shall operate upon her personal property, shall apply to the rents and profits of her real estate, and that her trustees shall be obliged to apply the personal estate, and the rents and profits when they arise, to the satisfaction of such general engagement.   But this court has not used any direct process against the separate estate of the wife.   And, as was remarked by Lord Thurlow in the case of *Hulme* v. *Tenant*, 1 Leading Cases in Equity, 509: "I know of no case where the general engagement of the wife has been carried to the extent of decreeing that the trustees of her real estate shall make conveyance of that real estate and by sale, mortgage or otherwise raise the money to satisfy that general engagement on the

part of the wife." This rule was adopted by this court in the case of *Frank & Adler* v. *Lilienfeld and others,* reported in 33d Gratt. 377. The judge, who delivered the opinion, saying : "I think the English rule, as stated by Lord Thurlow, is substantially correct, and therefore to satisfy a general engagment of the wife (and by general engagement I here mean an engagement made with reference to her separate estate so as to make it liable in a general sense, but which does not amount to a specific lien of any sort upon such estate), the personal property, when the interest of the wife is absolute and there is no restraint upon the alienation of such property imposed by the instrument creating the separate estate, may be sold by the decree of the court, and under like conditions the rents and profits of the separate real property may be subjected ;  \*  \*  \* but in no case, I think, should the real estate or any part thereof be sold by decree to satisfy the debt of the wife unless such debt be one secured by specific lien on such estate created in a mode which conforms to the mode required for a valid disposition by her of that estate."

It cannot be contended in this case that the Waterman debt is secured in such a mode as to constitute a specific lien upon the estate of Mrs. French. It is evidenced by her note, and was chargeable on her estate held under the deed from Garnett, conveying the land in question to her as and for her separate estate ; but before any suit was instituted on it, and before in any way it had been made a specific lien on the estate, the land was sold to Robert S. French for a valuable consideration, to be held under the terms and conditions and limitations of the trust created by the McCulloch deed, which have been stated above. She could occupy, possess and enjoy the estate, take the rents, issues and profits thereof, for and during her life, for her support and for the sustenance of her children ; and the power to sell the estate was given to her upon the condition that she should invest the proceeds in property to be held upon the same conditions and limitations. She was without the power to alien

or to encumber the said estate except under the limitations stated above; and her creditors, under her general engagements, could only be entitled to the ratable proportion of Mrs. French of any surplus of the annual products of the trust subject after providing for her support and the sustenance of her children; and as no such surplus is alleged, nor shown to exist, the bill of the plaintiff, Waterman, could not be sustained, and the same should have been dismissed upon the demurrer filed in the cause. This case comes under the ruling of this court in the case of *Nickell & Miller* v. *Handley,* 10 Gratt. 336, which is sustained by numerous decisions in this and other courts of last resort. See the cases of *Coutts* v. *Walker,* 2 Leigh, 268; *Roanes* v. *Archer,* 4 Leigh, 550; *Scott* v. *Gibbon,* 5 Munf. 86; *Markham* v. *Guerrant & Watkins,* 4 Leigh, 279; *Perkins* v. *Dickenson,* 3 Gratt. 320; *Johnston* ·v. *Zane's Trustees and others,* 11 Gratt. 552; *Radford* v. *Carwile,* 13 W. Va. 572, 585, and the numerous cases cited therein.

The deed of settlement in this case is not assailed, but is exhibited with and made a part of the bill, and the rights of Mrs. French, and her power of disposition of the trust estate, are limited and controlled by its terms. A court will always treat a deed or instrument as being the thing it purports to be, unless the contrary is shown. And it is incumbent upon the party impeaching it to show that it is not what it purports to be. Upon the face of the bills in the cause, and the exhibits filed therewith, it appears that Mrs. French was, under the deed in question, without the power to encumber or to dispose of the trust estate, except for reinvestment under the same restrictions as are contained in the first settlement; and, under the decided cases, there was nothing which the court could subject to the satisfaction of the Waterman debt, and the demurrer should have been sustained to the original and amended bills, and the same dismissed.

As to the Garnett debt, it had not then been set up in any form by him, and although it has been reported by the com-

missioner in the subsequent proceedings in the cause, it does not appear to be sustained by any satisfactory evidence now to be found in the cause, and no decree can properly be entered for its payment. But the bill will be dismissed without prejudice to his rights, which he may be able hereafter to establish by proper proceedings. Upon the whole case we are of opinion to reverse the decree of the circuit court of Culpeper, overruling the demurrer in the cause, and a decree will be entered here sustaining the demurrer and dismissing the cause.

DECREE REVERSED.